**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

ORLANDO FELIPE GARCIA-MORA,

Petitioner,

v.

CHRISTOPHER LAROSE, Warden of
Otay Mesa Detention Center, et al.,

Respondents.

Case No.: 3:26-cv-04083-RBM-VET

**ORDER GRANTING PETITION
FOR WRIT OF HABEAS CORPUS**

**[Doc. 1]**

Pending before the Court is Petitioner Orlando Felipe Garcia-Mora's ("Petitioner") Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241. (Doc. 1.) For the reasons set forth below, the Petition is **GRANTED**.

## I. BACKGROUND

Petitioner, a citizen of Mexico, entered the United States with his father on or around March 1, 2024. (Doc. 1 ¶¶ 1–2.) Petitioner and his father were apprehended, processed, and detained for a short period of time. (*Id*. ¶ 2.) "Once it was determined they were not a flight risk or a danger to the community, they were released on their own recognizance." (*Id*.) When Petitioner was old enough, he eventually applied for Deferred Action for Childhood Arrivals ("DACA"), obtained work authorization, and integrated himself into his community in California." (*Id*.) Petitioner also timely applied for asylum. (*Id*. ¶ 45.)

1

"Shortly after his entry, Respondents commenced removal proceedings against Petitioner under 8 U.S.C. § 1229a." (*Id*.) Petitioner alleges that he "regularly complied with and appeared for" required check-ins with the U.S. Immigration and Customs Enforcement ("ICE"). (*Id*. ¶ 47.)

On March 12, 2026, Petitioner was driving home when he claims "[h]is GPS somehow led him onto the entrance lane for Camp Pendleton." (*Id*. ¶ 3.) After Petitioner informed the gate guard that he made a wrong turn, the gate guard asked Petitioner for his identification and green card status. (*Id*.) Petitioner explained that he did not have a green card but that "he had a pending DACA application, previous work authorization, and was legally going about his business." (*Id*.) The gate guard instructed Petitioner to pull over and wait but provided no other explanation. (*Id*.) ICE agents showed up shortly thereafter and arrested Petitioner. (*Id*.) Petitioner was subsequently transferred to the Otay Mesa Detention Center were he remains today. (*Id*.) Petitioner claims that "Respondents did not conduct a pre-detention hearing [and] did not make an individualized determination that [he] was a flight risk or a danger to the community." (*Id*.)

## II.   <u>LEGAL STANDARD</u>

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

## III.   <u>DISCUSSION</u>

Petitioner claims his immigration detention violates the Fifth Amendment's Due Process Clause and the Administrative Procedure Act. (Doc. 1 ¶¶ 55–68.) Respondents

2

assert that "Petitioner was previously released from immigration custody on conditional parole issued under 8 U.S.C. § 1226(a)[,]" but maintain their position that "Petitioner is subject to mandatory detention under § 1225(b)(2)." (Doc. 4 at 2.) However, Respondents "acknowledge[ ] that this Court, and Courts in this District, have repeatedly reached the opposite conclusion under the same and/or similar facts" and "on that basis . . . do[ ] not oppose the [P]etition and defer[ ] to the Court on the appropriate relief." (*Id*. at 2–3.)

This Court has granted several habeas petitions filed by similarly situated petitioners who were previously released from detention on their own recognizance and re-detained several years later. In *Faizyan v. Casey*, the Court held such petitioners are "subject to the discretionary detention procedures under 8 U.S.C. § 1226 and [their] detention without a bond hearing violates the Due Process Clause." Case No.: 3:25-cv-02884-RBM-JLB, 2025 WL 3208844, at *2 (S.D. Cal. Nov. 17, 2025); *see also Ortega Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the INS used the phrase 'release on recognizance' as another name for 'conditional parole' under § 1226(a)."). Applying the due process inquiry in *Mathews v. Eldridge*, 424 U.S. 319 (1976), the Court also found that Respondents' summary revocation of the petitioner's "conditional parole without an opportunity to be heard deprived [him] of his due process rights." *Faizyan*, 2025 WL 3208844, at *7 (S.D. Cal. Nov. 17, 2025); *see C.A.R.V. v. Wofford*, Case No. 1:25- CV-01395 JLT SKO, 2025 WL 3059549, at *9 (E.D. Cal. Nov. 3, 2025) (finding a due process violation where the petitioner was initially released on his own recognizance).

In this case, Petitioner was detained upon his initial entry into the United States and released on his own recognizance shortly thereafter. (Doc. 1 ¶¶ 2, 41.) "As ICE was not authorized to release [Petitioner] if [he] was a danger to the community or a flight risk, the Court must infer from [the] release that ICE determined [he] was neither." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

Before he was re-detained in March 2026, Petitioner lived in the United States for two years, integrated himself into his community, was able to apply for asylum and DACA, "regularly complied with and appeared for ICE check-ins," and was granted work

3

authorization. (*See* Doc. 1 ¶¶ 44, 46–48.) Petitioner also claims, and Respondents do not dispute, that "[h]e was not given notice that his that his parole was being revoked [or] a pre-detention hearing to determine if the facts of his release had changed such that he was now a flight risk or that he was a danger to the community." (*Id.* ¶ 50.)

The Court therefore adopts its reasoning in *Faizyan* and applies it here. For those same reasons, the Court finds that: (1) Petitioner is subject to § 1226's discretionary framework; and (2) ICE's revocation of Petitioner's release on his own recognizance without a pre-deprivation hearing violated his due process rights and rendered his detention unlawful. *See Faizyan*, 2025 WL 3208844, at *7.

## IV.    CONCLUSION

Based on the foregoing reasons, the Petition (Doc. 1) is **GRANTED**. Accordingly:

1. Respondents are **ORDERED** to immediately release Petitioner from custody, subject to the conditions of his preexisting parole.

2. The Court **ORDERS** that, prior to any re-detention, Petitioner **SHALL** receive notice of the reasons for revocation of his release and a hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) to determine whether detention is warranted.

3. The noncitizen bears the burden of demonstrating, by a preponderance of the evidence, that he is not a danger to the community or a flight risk. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022).

**IT IS SO ORDERED**.

DATE: July 29, 2026

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE